UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

KYMYRA KHALIZA McDONALD                                            PLAINTIFF
ADC #711056

V.                          1:17CV00066 DPM/JTR

DARRYL GOLDEN, Warden; and
DEXTER PAYNE, Assistant Director, ADC                              DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Kymyra Khaliza McDonald ("McDonald") is a prisoner in the McPherson Unit of the Arkansas Department of Correction ("ADC"). She has filed this *pro se* § 1983 action alleging that Defendants Warden Darryl Golden ("Golden")

and ADC Assistant Director Dexter Payne ("Payne") violated her equal protection rights when they denied her request for a furlough to attend her mother's funeral.[1] *Docs. 2 & 7.*

Defendants have filed a Motion to Dismiss and a Brief in Support. *Docs. 12 & 13.* In those papers, Defendants argue that they are entitled to sovereign and qualified immunity. McDonald has filed a Response. *Doc. 18.*

The relevant facts, *as pled by McDonald*, are as follows:[2]

1. In October 2016, McDonald was a Class IV inmate, housed in punitive isolation at the McPherson Unit. She was on "minimum" security status, and was a non-violent offender serving a six-month parole violation sentence. *Doc. 2, at 6; Doc. 7, at 2.*

2. On October 15, 2016, McDonald's mother died. *Doc. 2, at 8.*

---

[1]During 28 U.S.C. § 1915A screening, the Court dismissed all other claims asserted by McDonald. *Docs. 8 & 9.*

[2]To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss, the Court must "liberally construe" a prisoner's *pro se* pleadings and may consider documents attached to those pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2009).

Accordingly, the Court has construed McDonald's *pro se* Complaint, Amended Complaint and Response, together, as constituting her claims. *See Kiir v. North Dakota Public Health*, 651 Fed. Appx. 567, 568 (8th Cir. 2016) (amendment "intended to supplement, rather than to supplant, the original complaint," should be read together with original complaint as plaintiff's complaint).

3. On October 16, 2016, McDonald was informed of her mother's death. She submitted an Inmate Request Form, seeking approval for an "emergency furlough" to attend her mother's funeral on October 21 in Little Rock. *Id. at 18 & 25*.

4. McDonald's family agreed to pay the necessary expenses for her to attend the funeral. The details were "all worked out" by the chaplain, the major and mental health staff, and arrangements were made for the Pulaski County Sheriff to provide transportation. *Id. at 7-8*.

5. Golden denied McDonald's request for a furlough based on her "disciplinary history," and Golden's belief that "her mental state was a risk that [might cause her to] get out and harm [her]self." *Id. at 5, 10 & 18*.

6. On October 19, 2016, McDonald filed a grievance because she had "been denied the opportunity to go to [her] mother's funeral by Warden Golden … for no reason." *Id. at 10*. On October 26, 2016, Golden responded to the grievance, stating that her furlough request had been denied "based on [her] punitive status, suicide history, mental health and concerns from Chaplain Lang." *Id. at 12*. While Golden acknowledged that "it is possible other inmates who have been assigned to Segregation have been allowed to go on furloughs to family funerals," he stated that "all [such furlough requests] have been reviewed for the same criteria in order to make a determination for approval/disapproval." *Id*. McDonald appealed. *Id*.

7. On November 9, 2016, Payne found McDonald's appeal to be "without merit." *Id. at 13*.

8. At the time of McDonald's furlough request, she was not housed in the unit for mentally unstable prisoners, was on no mental health medications other than anti-depressants, and had seen mental health providers only two times. Although she had been on "suicide watch" one time several months earlier, she was not on suicide precautions at the time of her furlough request. *Id. at 5, 12 & 20; Doc. 7, at 4 & 12*.

9. According to Chaplain Lang, her "only concern was [McDonald's] punitive time in segregation" and she "did [her] best to prepare and arrange all details and paperwork" to allow McDonald to attend her mother's funeral. *Doc. 2, at 23*.

10. McDonald alleges that Kanisha Adrow, another McPherson Unit inmate, had been allowed to attend the funerals of family members approximately two years earlier. At the time of those furloughs, Adrow was a Class IV inmate on "maximum security," and in punitive isolation at the time she attended one of the funerals. According to McDonald: (a) Adrow had an extensive history of violent disciplinaries; (b) Adrow had been on "treatment precautions" three times or more; and (c) Adrow was not on suicide precautions at the time she was allowed furlough. *Id. at 6; Doc. 7, at 2, 4 & 6; Doc. 18, at 3-4*. Golden was not involved in the furlough decisions regarding Adrow, all of which were approved by Payne. *Doc. 7, at 4*.

11. McDonald also alleges that Sally Jackson, another McPherson Unit

inmate, was allowed to attend the funeral of her father, who died one week prior to McDonald's mother. According to McDonald, at the time Jackson's furlough request was approved, she was housed in punitive segregation; she was a Class IV "maximum security" inmate; she had previously been on treatment precautions; and she had an extensive disciplinary history. *Doc. 2, at 6; Doc. 7, at 1-2, 4 & 23; Doc. 18, at 3-4.* Golden personally approved Jackson's furlough, and Payne concurred. *Doc. 7, at 3-4.*

12. Finally, McDonald alleges that Lakoya Peoples, another McPherson Unit inmate, was allowed to attend a family member's funeral on an unspecified date. According to McDonald, at the time her furlough request was approved, Peoples was a Class IV inmate in punitive segregation, with an extensive disciplinary history, and she had been on "treatment precautions." *Doc. 2, at 5.*

## II. Discussion

### A. Sovereign Immunity

The doctrine of sovereign immunity precludes a plaintiff from obtaining monetary damages against state actors named in their official capacities. *See Reid v. Griffin,* 808 F.3d 1191, 1192 (8th Cir. 2015); *Murphy v. Arkansas,* 127 F.3d 750, 754 (8th Cir. 1997) (damages claims against state officials acting in their official capacities are barred "either by the Eleventh Amendment or because in these

capacities they are not 'persons' for § 1983 purposes"). However, sovereign immunity does not bar a plaintiff from obtaining: (1) monetary damages against state actors named in their individual capacities; or (2) prospective injunctive relief against state actors named in their official capacities. *Murphy,* 127 F.3d at 754.

In her pleadings, McDonald alleges only that she is suing Defendants in their individual capacities for monetary damages, and she does not state that she is seeking any form of injunctive relief against Defendants. *See Doc. 2, at 4; Doc. 18, at 3*. Because monetary damages are the *only* form of relief sought by McDonald, any official-capacity claims against Defendants should be dismissed, without prejudice.

**B.     Qualified Immunity**

Defendants argue that they are entitled to qualified immunity on McDonald's only remaining claim that they violated her equal protection rights in denying her furlough to attend her mother's funeral. In order to prevail on their Motion to Dismiss, Defendants "must show that they are entitled to qualified immunity on the face of the complaint." *Dadd v. Anoka County,* 827 F.3d 749, 754 (8th Cir. 2016). Thus, the Court must determine: (1) whether McDonald "has stated a plausible claim for violation of a constitutional or statutory right;" and (2) "whether the right was clearly established at the time of the alleged infraction." *Id.* at 754-55.

According to McDonald, she was "personally discriminated against," in violation of her constitutional right to be "treated equally," when Defendants denied

6

her furlough request to attend her mother's funeral, but granted requests from three other "similarly situated" inmates. She contends that the reasons given by Defendants for rejecting her request were not "valid," and were contradicted by other evidence. She believes that Golden denied her request for "personal reasons" and based on his own "personal opinions."

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). Unless the equal protection claim is based on the aggrieved party's membership in a "protected class" or infringes a "fundamental right," the challenged decision of Golden and Payne, in refusing to allow McDonald to attend her mother's funeral, must be evaluated under the "rational basis" test. *See Nolan v. Thompson,* 521 F.3d 983, 989 (8th Cir. 2008).

McDonald does not allege that she was denied the furlough based on her race or any other protected classification. *See Doc. 7, at 1*. Additionally, the law is clear that a prison inmate has no constitutionally protected right to a furlough to attend a family member's funeral. *See Rathers v. Raney,* 238 F.3d 423, at *2 (6th Cir. 2000) (unpub. op.) ("An inmate has no liberty interest in attending a family member's wake or funeral[.]"); *Thomas v. Farley,* 31 F.3d 557, 559 (7th Cir. 1994) ("[N]either federal law nor Indiana law entitles prisoners to compassionate leave [to attend a funeral] or for that matter even to have contact with their families in the prison[.]");

*Merritt v. Broglin,* 891 F.2d 169, 174-75 (7th Cir. 1989) (prisoner did not have a liberty interest in attending his step-father's funeral); *Roman v. Donelli,* 616 F. Supp. 2d 299, 305 (N.D.N.Y. 2007) ("It is well-settled that there is no constitutionally protected liberty or property interest in attending the funeral of a family member."), *aff'd,* 347 Fed. Appx. 662 (2d Cir. 2009); *see also Nash v. Black,* 781 F.2d 665, 668 (8th Cir. 1986) (Missouri prisoner had "no protected liberty interest in receiving a transfer or furlough").

Accordingly, McDonald's allegations can only be construed as raising a "class of one" equal protection claim, *i.e.,* that Golden and Payne "singled [her] out" and "intentionally treated [her] differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Flowers v. City of Minneapolis, Minn.,* 558 F.3d 794, 799 (8th Cir. 2009) (quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564-65 (2000)).

In *Engquist v. Oregon Department of Agriculture,* 553 U.S. 591 (2008), the Court limited the circumstances in which a plaintiff can maintain a class-of-one equal protection claim:

> There are some forms of state action … which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases, the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person

> would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603. Thus, the Court concluded that class-of-one equal protection claims are "simply a poor fit" in the context of disputes arising from how a decisionmaker exercised his or her discretion. *Id.* at 605; *see Flowers,* 558 F.3d at 799 (because police "decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion," plaintiff could *not* use a class-of-one equal protection theory to attack those decisions).

Due to the inherently discretionary and individualized nature of the decisions made by state actors charged with managing and caring for prisoners, courts have recognized that prisoners' class-of-one claims alleging arbitrary treatment by prison officials generally are not cognizable under *Engquist*. *Glassey v. Ryan,* No. CV12-01490, 2016 WL 6080672, at *4 (D. Ariz. Mar. 7, 2016) (collecting cases); *Freudenberg v. Sakai,* Civil No. 14-00276, 2014 WL 4656485, at *4-5 (D. Haw. Sept. 16, 2014) (dismissing class-of-one claim because "the decision regarding whether an inmate is suitable to be released into the community as part of a work furlough program necessarily involves a case-by-case determination, discretionary decisionmaking, and subjective, individualized assessments"); *Dawson v. Norwood,* No. 1:06cv914, 2010 WL 2232355, at *2 (W.D. Mich. June 1, 2010) ("[T]he class-of-one equal protection theory has no place in the prison context where a prisoner

challenges discretionary decisions regarding security classifications and prisoner placement.").

Finally, several courts have held that, because prison officials' decisions to grant or deny a funeral furlough request are "purely discretionary" acts that involve the consideration of multiple, individualized factors, the Equal Protection Clause does not prohibit those officials from deciding to grant funeral furloughs to some inmates but not to others. *See Baker v. Dep't of Corrections,* Civil No. 13-3087, 2015 WL 5227458, at *7 (D.N.J. Sept. 8, 2015) (because a prison official's denial of a furlough to attend a private viewing was "a discretionary decision where a subjective and individualized determination was required," plaintiff failed to state a class-of-one equal protection claim); *Sorenson v. Minnesota Dep't of Corrections,* Civil No. 12-1336, 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012) ("Plaintiff's Equal Protection argument that he is being treated as a 'class of one' fails because requests for funeral furlough are evaluated on a purely discretionary basis.").

McDonald has not identified any statute, rule or regulation that *requires* the ADC to allow inmates to attend funerals, or that limits the discretion of prison officials in deciding when to grant or deny a funeral furlough request. The decision regarding whether an inmate is suitable to be released from prison to attend a funeral necessarily involves a case-by-case determination that is based on a discretionary, subjective and individualized assessment. Indeed, McDonald's allegations and the

attachments to her pleadings make it clear that Defendants' decision to deny her furlough request was based on a number of factors individual to her situation, including her disciplinary history, her punitive status, a history of suicide attempts, mental health issues, and concerns expressed by the chaplain. Thus, under *Engquist,* McDonald has failed to state a plausible class-of-one equal protection claim.[3]

Because the facts, *as pled by McDonald*, do not establish a plausible violation of her constitutional right to equal protection, Defendants are entitled to qualified immunity from McDonald's claims. Accordingly, the Court recommends that Defendants' Motion to Dismiss be granted, and that this § 1983 action be dismissed in its entirety, without prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion to Dismiss *(Doc. 12)* be GRANTED.

2. McDonald's Complaint and Amended Complaint (*Docs. 2 & 7*) be DISMISSED, WITHOUT PREJUDICE.

3. The dismissal of this case be counted as a "STRIKE," pursuant to 28 U.S.C. § 1915(g).

---

[3]Because *Engquist* precludes McDonald's claim, the Court need not determine whether: (1) Adrows, Jackson and Peoples were similarly situated to her; and (2) Defendants had a "rational basis" for denying her furlough request.

4. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 24th day of July, 2018.

*J. Thomas Ray*

_____
UNITED STATES MAGISTRATE JUDGE